❑ Original   ❑ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Devices A, B, C, and D, collectively, the "Devices",<br>currently in law enforcement custody, as further<br>described in Attachment A | )<br>)<br>)  Case No.24-875M(NJ)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 7/8/2024 _____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Nancy Joseph_____ .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued: 6/24/2024 @ 2:57 p.m. _____

_____*Judge's signature*_____

City and state:   Milwaukee, WI _____      Honorable Nancy Joseph, U.S. Magistrate Judge
                                                          *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

---

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Items to Be Searched

The property to be searched are four electronic devices, more particularly described as follows:

a. One silver Celero 5G cellphone, no case/cracked screen, West Allis Property #24-002777-5 hereinafter "**Device A**." This device was located in the white Yukon vehicle driven by Pulliam on June 18, 2024.

b. One black Samsung cellphone, T-Mobile, with a black Otter Box, West Allis Property #24-002777-4 hereinafter "**Device B**." This device was located in the white Yukon vehicle driven by Pulliam on June 18, 2024.

c. One black Samsung cellphone, Boost Mobile, with a red case, West Allis Property #24-002777-3 hereinafter "**Device C**." This device was located in the white Yukon vehicle driven by Pulliam on June 18, 2024.

d. One red USB drive, West Allis Property #24-002792-43 hereinafter **"Device D."** This device was located in Pulliam's residence, 8751 N. 72nd Street, Unit #5, on June 18, 2024.

**Devices A, B, C, and D** collectively, the "**Devices**" are currently on property at the West Allis Police Department, located at 11301 West Lincoln Avenue, in the City of West Allis, County of Milwaukee, Wisconsin. **Devices A-C** were all seized at 5800 N. Bayshore Drive, Glendale, Wisconsin on June 18, 2024. **Device D** was seized from Pulliam's residence, 8751 N. 72nd Street, Unit #5, Milwaukee, Wisconsin on June 18, 2024.

This warrant authorizes the forensic examination of the **Devices** for the purpose of identifying the electronically stored information described in Attachment B.

1

**ATTACHMENT B**

**Property to Be Seized**

1.      All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1), and 18 U.S.C. §§ 924(c) and 922(g), and involve Zadok Z. Pulliam and other known and unidentified subjects, since **January 1, 2024:**

      a.   preparatory steps taken in furtherance of these crimes;

      b.   all voicemail and call records;

      c.   all text messages and call history

      d.   any audio, video, and/or photograph(s) files on the phone of criminal activity or of evidentiary value;

      e.   lists of customers and related identifying information;

      f.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

      g.   Types, quantities, and prices of firearms possessed;

      h.   any information related to co-conspirators and sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

      i.   photographs and/or video depicting possession of drugs, firearms, assets, or other activities related to drug trafficking or money laundering;

      j.   any evidence related to either the ownership, purchase, possession, or distribution of drugs and/or firearms;

      k.   records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

      l.   all data, communications, information, and records, in whatever form, that have any tendency to establish the actual or intended physical location of its user, or that of any of their associates involved in criminal activity, as well as the physical location of the **Devices**.

1

2. Evidence of user attribution showing who used or owned the **Devices** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history; and

3. Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

   a. records of Internet Protocol addresses used; and

   b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the HIDTA/DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Devices A, B, C, and D, collectively, the "Devices",<br>currently in law enforcement custody, as further<br>described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 24-875M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) &<br>18 U.S.C. § 924(c) and<br>922(g) | Possession with intent to distribute controlled substances; Possession of a<br>firearm by a felon & Possession of a firearm in furtherance of drug trafficking. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

ALLISON MILLER
(Affiliate)

Digitally signed by ALLISON
MILLER (Affiliate)
Date: 2024.06.24 07:57:59 -05'00'

*Applicant's signature*

Allison Miller, DEA TFO

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: 6/24/2024 @ 2:58 p.m.

*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF AN APPLICATION**</u>
<u>**FOR A WARRANT TO SEARCH AND SEIZE**</u>

I, Allison Miller, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—**electronic devices**—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a state certified law enforcement officer who is currently a federally deputized Task Force Officer (T.F.O.) with Group 68 on the Drug Enforcement Administration (D.E.A.) and assigned to the Drug and Gang Task Force with North Central High Intensity Drug Trafficking Area (HIDTA); I have worked full-time as a law enforcement officer for sixteen (16) years. Prior to working at North Central HIDTA, I was assigned to the West Allis Police Department Special Investigations Unit, which primarily investigates crimes involving narcotics trafficking and prostitution; I have received training in the investigation of drug trafficking through my assignments related to narcotics investigations for the West Allis Police Department; I have participated in several narcotics-related investigations, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, thousands of dollars in United States currency and other evidences of criminal activity.  As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and has obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances.  Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled

1

substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, and court-ordered wiretaps, analysis of phones, and arrests of numerous drug traffickers. I have been the affiant on many search warrants. I have also spoken on numerous occasions with other experienced narcotics investigators concerning the methods and practices of drug traffickers.

3. Through my experience in the investigation of firearms, I know that some subjects become obsessed with guns such as: the collection of said items as well as the frequency of use, the retaining of their used targets and spent casings, the unlawful possession and the inability to travel in public without violating Wisconsin's Carrying a Concealed Weapon Law; and photographs of themselves displaying their firearms, which have been commonly observed in persons residences or places that they exercise dominion and control over; I have worked with local, state and federal law enforcement agents investigating the possession, use and trafficking of controlled substances and weapons in the Milwaukee area; affiant has participated in the execution of numerous search warrants in which weapons were seized; I have worked with informants in the investigation of drug trafficking in the Milwaukee area; affiant has participated in search warrants, investigations, and arrests in which controlled substances and drug paraphernalia were seized; I am familiar with the street names of various drugs in the Milwaukee area including marijuana, ecstasy, heroin, fentanyl, and cocaine; I am familiar with methods that are commonly used by drug dealers to package and prepare controlled substances for sale in the Milwaukee area;

4. I have investigated violations of Federal law, directed drug investigations, obtained, and executed search and arrest warrants related to the distribution of illegal narcotics and illegal firearm possession, and debriefed confidential informants and cooperating defendants.

I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.

5.      I have participated in the investigation of narcotic related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, United States currency, and other evidence of criminal activity.  As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacturing, and distribution of controlled substances.  Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances.  I have participated in all aspects of drug investigations including physical surveillance, execution of search warrants, undercover transactions, court ordered wiretaps, analysis of phone records, analysis of electronic devices, financial records informant handling and the arrest of numerous drug traffickers.  I have authored many search warrants during my tenure as a law enforcement officer.  I have also spoken on numerous occasions with other experienced narcotics investigators, both foreign and domestic, concerning the methods and practices of drug traffickers and money launderers.  Furthermore, I have attended training courses, which specialized in the investigation of drug trafficking and money laundering. Through these investigations, training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking – derived proceeds.  I am aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activity.

3

6.     Based on my training, experience, as well as information relayed to me during the course of official duties, I know that a significant percentage of controlled substances, specifically marijuana, cocaine, heroin, fentanyl and methamphetamine, imported into the United States comes from Mexico and enters the domestic market at various points along the southwest borders of the United States, because Mexican cartels control the transportation, sale, and importation of marijuana, cocaine, heroin, fentanyl, and methamphetamine into the United States.

7.     Based on my training, experience, and conversations with other law enforcement officers, I know that the distributors of marijuana, cocaine, heroin, fentanyl, and methamphetamine as well as other controlled substances, often used cellular and landlines telephones.  Additionally, I know that drug traffickers often change their phone numbers and cellular devices on frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identity.  I know that these individuals often use code words to discuss controlled substances and methods of concealing controlled substances while talking on the telephone.  I know drug traffickers often conduct extensive counter – surveillance to avoid law enforcement detection.

8.     Based on my training and experience, I know that narcotic trafficking and money laundering organizations routinely used several operational techniques to sustain their illegal enterprises.  There practices are designed and implemented to achieve two paramount goals: First, the successful facilitation of the organization's illegal activities including the importation and distribution of controlled substances and the subsequent repatriation of the proceeds of that illegal activity; and second, the minimization of the exposure of the coconspirators, particularly

4

those operating in leadership roles, from investigations and prosecution by law enforcement.

More specifically, based on training and experience, I know the following:

a. Sophisticated drug trafficking organizations routinely compartmentalize their illegal operations. The compartmentalization of the operations reduces the amount of knowledge possessed by each member of the organization. This method of operation effectively minimizes the potential damage an individual cooperating with law enforcement could inflict on the organization and further reduces the adverse impact of the particular law enforcement actions against the organization.

b. Members of these organizations routinely used communications facilities, such as cellular telephones to communicate directions and information about the organization's illegal activities to other organization members.

c. During the course of these telephonic communications, organization members routinely use coded references and encryption in an effort to elude law enforcement detection.

d. The communication of time sensitive information is critical to the successful conduct of these organizations' illegal activities. The critical nature of this information stems from the necessity of the organization's leadership to provide direction from the importation and distribution of narcotics and subsequent laundering of the proceeds of those activities.

e. Drug traffickers and money launderers associated with them often confine their illegal telephonic communications to long – trusted organizational members and high – level narcotics traffickers in an attempt to evade law enforcement and circumvent narcotics investigations; and

f. Drug traffickers routinely use fictitious names or other individuals to register pagers, telephones, vehicles, real property, and utility services to avoid detections from law enforcement.

g. Drug traffickers used what is refer to as a "stash house" to stow illegal items such as illegal controlled substance, packaging paraphernalia, illegal firearms, ledgers, and US currency. Often time's members of drug trafficking organizations have to make stops at the stash locations to pick up illegal controlled substance to deliver. Multiple stops can be made in a day at these locations. This is done so the trafficker does not have to carry additional illegal controlled substances in their vehicle or person. This protects the trafficker from law enforcement investigations as they do not have illegal controlled substances on them after the delivery is made. Often times the US currency will be transported after the delivery to the stash house to protect against law enforcement investigation and

5

rival drug trafficker's robbery crews.

9.      I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

10.     Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data).  Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware and software which are (1) instrumentalities, fruits, or evidence of crime, or (2) storage devices for information about crime.

11.     To this end, based upon my training and experience, I know that individuals involved in criminal activity to use their cellular telephones to facilitate such activities. For example, I know that individuals involved in drug trafficking frequently use cellular telephones to maintain contact and arrange transactions with their sources and customers of and co-conspirators in the distribution of controlled substances. I have also found it very common for crime suspects to use their cellular telephones to communicate aurally, via electronic message in

6

"text" format, or through third-party messaging applications with individuals whom they purchase, trade, or otherwise negotiate to obtain illegal drugs. I also believe that it is common for crime suspects who possess illegal controlled substances and firearms to often take or cause to be taken photographs and other visual depictions of themselves, their associates, and the illegal controlled substances and firearms that they control, possess, buy, and sell. Finally, I also know that it is common for individuals involved in money laundering to have photographs and messages relating to financial account and payment information and financial transactions.

12.     The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. Throughout this affidavit reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation and whom I have had regular contact regarding this investigation. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

13.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of possession with intent to distribute controlled substances, a violation of Title 21, United States Code, Section 841; and possession of a firearm in furtherance of drug trafficking and possession of a firearm by a prohibited person, violations of Title 18, United States Code Sections 924(c) and 922(g)(1) have been committed by Zadok Z. Pulliam and other known and unidentified subjects.

14.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. §

7

2711(3)(A)(i).

15.    There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## <u>IDENTIFICATION OF THE DEVICES TO BE EXAMINED</u>

16.    The property to be searched are four electronic devices, more particularly described as follows:

- One silver Celero 5G cellphone, with no case and a cracked screen, West Allis Property #24-002777-5 hereinafter "**Device A**." This device was located in the white Yukon vehicle driven by Pulliam on June 18, 2024.

- One black Samsung cellphone, T-Mobile, with black Otter Box, West Allis Property #24-002777-4 hereinafter "**Device B**." This device was located in the white Yukon vehicle driven by Pulliam on June 18, 2024.

- One black Samsung cellphone, Boost Mobile, with a red case, West Allis Property #24-002777-3 hereinafter "**Device C**." This device was located in the white Yukon vehicle driven by Pulliam on June 18, 2024.

- One red USB drive, West Allis Property #24-002792-43 hereinafter **"Device D."** This device was located at Pulliam's residence, 8751 N. 72nd Street, Unit #5, during the execution of the search warrant on June 18, 2024.

17.    **Devices A, B, C, and D,** collectively, the "**Devices**" are currently on property and located at the West Allis Police Department, 11301 West Lincoln Avenue, in the City of West Allis, County of Milwaukee, Wisconsin in the Eastern District of Wisconsin. The **Devices A-C** were all seized from Pulliam's vehicle at 5800 N. Bayshore Drive, Glendale, Wisconsin on June 18, 2024. **Device D** was seized from Pulliam's residence, 8751 N. 72nd Street, Unit #5, Milwaukee, Wisconsin during the execution of the search warrant on June 18, 2024.

18.    The applied-for warrant would authorize the forensic examination of the **Devices** for the purpose of identifying electronically stored data particularly described in Attachment B.

8

**PROBABLE CAUSE**

19.     The United States, including, the West Allis Police Department, the North Central Drug Trafficking Area (HIDTA), the Drug Enforcement Administration (DEA), is conducting a criminal investigation into Zadok Z. Pulliam for possible violations of 21 U.S.C. § 841(a)(1), and Title 18 U.S.C. §§ 924(c) and 922(g)(1).

20.     In March 2024, West Allis Police officers became aware of a suspected drug overdose death that occurred in West Allis, Wisconsin.  The deceased was an adult female with the initials A.H.  At the death scene, West Allis police officers located suspected cocaine and fentanyl. These substances were subjected to presumptive field testing and tested positive as cocaine and fentanyl.  Thereafter, West Allis Police conducted an investigation to determine the source(s) of the suspected cocaine and fentanyl located at the death scene.

21.     Case agents located A.H.'s cell phone at the scene of her death and later reviewed A.H.'s most recent contacts.  In doing so, case agents observed that phone number 414-698-6915 was in contact with A.H.'s phone within 24 hours of her being located deceased.  Based on the content of the text messages, in which it appeared that A.H. was attempting to purchase narcotics from the user of 414-698-6915, case agents identified the user of 414-698-6915 as being involved in supplying cocaine and/or fentanyl to A.H.

22.     Case agents secured court authorization for phone location data and a pen register/trap and trace for 414-698-6915.  On more than one occasion while case agents were conducting surveillance at the locations where the phone number 414-698-6915 was pinging, Zadok Z. PULLIAM (M/B DOB 04/13/1975) was observed at those same locations.  This was consistent with PULLIAM being in possession of the device bearing 414-698-6915. As a result, the user of 414-698-6915 was identified as PULLIAM. Through case agents' investigation, case

9

agents were able to determine that PULLIAM used the residence of 8751 N. 72nd St. Unit # 5 Milwaukee, Wisconsin to further his drug trafficking operation. PULLIAM was also identified as using a white 2018 GMC Yukon bearing WI plate # AGX-9174 (registered to Zadok Z. PULLIAM M/B 04/13/1975 of 2651 N. Palmer St. Milwaukee, WI) and /or white 2022 Dodge Challenger WI plate # AWW-7014 (registered to Zadok PULLIAM M/B 04/13/75 of 2651 N. Palmer St. Milwaukee, WI) to trip to the Chicago Metro Area, where he was suspected of picking up larger amounts of fentanyl and/or cocaine.

23.     On June 18, 2024, at approximately 9:45 a.m., the location data for 414-698-6915 indicated that the device was heading southbound towards Chicago, Illinois. At approximately 10:59 a.m., the location data for 414-698-6915 indicated the device was in Deerfield, Illinois still heading southbound. Investigators knew from Flock databases that the white 2018 Yukon bearing WI plate # AGX-9174 (registered to Zadok Z. PULLIAM M/B 04/13/1975 of 2651 N. Palmer St. Milwaukee, WI) had been in the City of Milwaukee just prior to this trip to Illinois. At approximately 1:00 p.m., the location data for 414-698-6915 showed that the device was headed northbound towards Milwaukee, Wisconsin from Evanston, Illinois. At approximately 1:38 p.m., SA Russell Dykema and TFO John Schott located the white 2018 Yukon bearing WI plate # AGX-9174 traveling north on I94 at W. College Ave. in the City of Oak Creek, County of Milwaukee. SA Dykema advised that the vehicle was traveling approximately 75 mph in a 55mph zone (20 mph over the speed limit) and observed equipment/registration violations.

24.     Surveillance units followed the white 2018 Yukon bearing WI plate # AGX-9174 north on I94, where it exited to Port Washington Rd. from W. Silver Spring Dr. (West) exit. At approximately 1:55 p.m., a traffic stop was conducted as the Yukon entered the Bay Shore Mall parking lot at 5800 N. Bayshore Dr. City of Glendale, County of Milwaukee, Eastern District of

10

Wisconsin, by TFO John Schott, SA Russell Dykema, TFO / K9 Officer Christopher Conway and Det. Sharif Said. During this traffic stop, Zadok PULLIAM was identified as the driver and sole occupant of the Yukon.

25. PULLIAM refused to exit the vehicle or unlock the doors. PULLIAM was arrested for resisting arrest. Investigators spoke with PULLIAM, while TFO Conway and his K9 partner Flexy conducted a K9 sniff around the exterior of the white 2018 Yukon bearing WI plate # AGX-9174. TFO Conway advised that K9 Flexy alerted to the odor of controlled substances/narcotics emitting from the white 2018 Yukon bearing WI plate # AGX-9174. Upon a search of the white 2018 Yukon bearing WI plate # AGX-9174, investigators located three cell phones on the center console, one having the number 414-698-6915. Upon a further search of the Yukon, investigators located approximately one kilogram of fentanyl inside a sweatshirt on the back seat. This kilogram was wrapped in cellophane stamped with a "DG."  A sample of the substance contained within this kilogram was subjected to the NARK II 33 field test, a test used to detect the presence of fentanyl.  The substance tested positive for fentanyl and weighed approximately 1,056 grams.

26. Case agents located the following three electronic devices, more particularly described as follows, within the Yukon:

   a.   One silver Celero 5G cellphone, no case/cracked screen, West Allis Property #24-002777-5 hereinafter "**Device A**."  This device was located in the white Yukon vehicle driven by Pulliam on June 18, 2024. At the West Allis Police Department, West Allis Detective Nick Stachula called telephone number 414-698-6915 and observed this device ring and display the officer's phone number.

   b.   One black Samsung cellphone, T-Mobile, with a black Otter Box, West Allis Property #24-002777-4 hereinafter "**Device B**."  This device was located in the white Yukon vehicle driven by Pulliam on June 18, 2024.

11

c. One black Samsung cellphone, Boost Mobile, with a red case, West Allis Property #24-002777-3 hereinafter "**Device C**." This device was located in the white Yukon vehicle driven by Pulliam on June 18, 2024.

27. These three devices were secured on scene and later transported to the West Allis Police Department at 11301 West Lincoln Avenue, City of West Allis, County of Milwaukee, where they remain.

28. The WE Energies account holder for the residence of 8751 N. 72nd St., Unit #5, was identified as Zadok PULLIAM. A state search warrant was obtained for the residence of 8751 N. 72nd St. Unit # 5 City of Milwaukee, County of Milwaukee, Eastern District of Wisconsin, and executed on June 18, 2024, at approximately 5:50 p.m. A search of the residence revealed numerous identifiers/documents for Zadok PULLIAM throughout the residence, which included documents with the address of 8751 N. 72nd St. There were no occupants present at the residence at time the warrant was executed.

29. During the search of the residence, investigators located six firearms. Specifically, in the living room closet, they located (a) Palmetto State Armory Assault Rifle Model PA-15 .223; (b) Smith & Wesson MP .40 caliber semiautomatic handgun; (c) Smith & Wesson MP 40C .40 caliber semiautomatic handgun; and (d) Imperial .22 caliber revolver. In the garage, they located a Dickenson 12-gauge semi-automatic shotgun and in the dresser in the northwest bedroom, they located a Smith & Wesson MP Shield .45 caliber semiautomatic handgun.

30. During the search of the residence, investigators located a red USB drive, West Allis Property #24-002792-43 hereinafter **"Device D"** that was with numerous ID cards for Zadok Pulliam and several cellphones inside a white garbage bag under the bed, in the northwest (master/main) bedroom. This device was secured at the residence and later transported to the

12

West Allis Police Department at 11301 West Lincoln Avenue, City of West Allis, County of Milwaukee, where it remains.

31. During the search of the residence, investigators also located:

    a. approximately 103 grams of cocaine packaged in various amounts, located in the west wall cabinet of the kitchen;

    b. approximately 3.17 grams of fentanyl in two separate packages, located in the west wall cabinet of the kitchen and in a backpack in the living room closet;

    c. a quantity of marijuana;

    d. approximately one suspected Oxycodone 10 mg pill; and

    e. digital scales, cutting agents, packaging materials, numerous rounds of unfired cartridges (various calibers), and large amounts of United States Currency (approximately $20,000/pending official count).

32. A sample of the suspected fentanyl located in the residence was subjected to the NARK II 33 field test, a test used to detect the presence of fentanyl. The substance tested positive for fentanyl and weighed approximately 3.17 grams. A sample of the suspected cocaine located in the residence was subjected to the NARK II 07 field test, a test used to detect the presence of cocaine. The substance tested positive for cocaine and weighed approximately 103 grams.

33. Online Wisconsin Circuit Court Records (CCAP) show that Zadok PULLIAM is a convicted felon and is prohibited from possessing firearms. In Milwaukee County case 2010CF002744, PULLIAM was convicted on November 19, 2010, of the felony offense of Child Abuse-Recklessly Cause Harm, in violation of Wisconsin Statute § 948.03(3)(b). This crime is a Class I felony, punishable by a maximum penalty of 18 months of initial confinement and 24 months of extended supervision. Said felony conviction remains of record and unreversed.

13

34.     Case agents are aware that the above-described firearms recovered from PULLIAM's residence on June 18, 2024, were not manufactured in the State of Wisconsin and therefore traveled in interstate commerce prior to that date.

35.     Based upon training, experience, and the investigation to date, case agents are aware that approximately 103 grams of cocaine, 1056 grams of fentanyl from the traffic stop and 3.17 grams of fentanyl located in the residence, is not consistent with a personal use quantity of those substances and instead, is consistent with the possession of cocaine and fentanyl with the intent to further distribute the cocaine and fentanyl.  Further, based upon said training, experience, and investigation, case agents are aware that the firearms recovered are consistent with being used in furtherance of said drug trafficking offenses.

36.     **Devices A, B, and C,** seized from the Yukon, **and Device D,** seized from the residence, are currently in the lawful possession of law enforcement. In my training and experience, I know that the **Devices** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Devices** first came into the possession of the police.

37.     I know that persons (to include Pulliam, and others) who engage in ongoing criminal drug trafficking utilize cellular devices to further their activities. I know that drug traffickers utilize cellular devices to maintain contact with other affiliates and store information relating to drug trafficking. I know that evidence of drug trafficking can be held on the photographs, videos, call logs, text messages, contact lists, and otherwise stored digital information. I know that drug traffickers often record images and/or videos depicting narcotic evidence, maintain contact with others regarding drug trafficking through cellular devices which would be recorded in call logs and text messages, as well as maintain a contact list of affiliates

14

within their cellular devices for personal reference and use. I know that additional evidence of drug trafficking would be stored within other digital stored memory of the cellular devices, and that law enforcement investigators could retrieve the electronically stored evidence if accessible. I also know that persons who unlawfully possess firearms (including in furtherance of drug trafficking) frequently maintain evidence related to their use of said firearms on their cellular devices to include photographs/videos of them in possession of the firearms and text messages with others concerning the acquisition of the firearms.

## **TECHNICAL TERMS**

38.     Based on my training and experience, I use the following technical terms to convey the following meanings:

     a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

     b.   Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored

15

images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.   Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.   GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.   PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access

16

the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

39.    Based on my training, experience, and research, I know that the **Devices** have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA, and a tablet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

40.    Based on my knowledge, training, and experience, I know that electronic devices—like the **Devices**—can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on such devices. This information can sometimes be recovered with forensics tools.

41.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct

17

evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Devices** were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Devices** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

    42. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Devices** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

43. *Manner of execution.* **Because** this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## <u>CONCLUSION</u>

44. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Devices** described in Attachment A to seek the items described in Attachment B.

19

## ATTACHMENT A

### Items to Be Searched

The property to be searched are four electronic devices, more particularly described as follows:

    a.  One silver Celero 5G cellphone, no case/cracked screen, West Allis Property #24-002777-5 hereinafter "**Device A**." This device was located in the white Yukon vehicle driven by Pulliam on June 18, 2024.

    b.  One black Samsung cellphone, T-Mobile, with a black Otter Box, West Allis Property #24-002777-4 hereinafter "**Device B**." This device was located in the white Yukon vehicle driven by Pulliam on June 18, 2024.

    c.  One black Samsung cellphone, Boost Mobile, with a red case, West Allis Property #24-002777-3 hereinafter "**Device C**." This device was located in the white Yukon vehicle driven by Pulliam on June 18, 2024.

    d.  One red USB drive, West Allis Property #24-002792-43 hereinafter **"Device D."** This device was located in Pulliam's residence, 8751 N. 72nd Street, Unit #5, on June 18, 2024.

**Devices A, B, C, and D** collectively, the "**Devices**" are currently on property at the West Allis Police Department, located at 11301 West Lincoln Avenue, in the City of West Allis, County of Milwaukee, Wisconsin. **Devices A-C** were all seized at 5800 N. Bayshore Drive, Glendale, Wisconsin on June 18, 2024. **Device D** was seized from Pulliam's residence, 8751 N. 72nd Street, Unit #5, Milwaukee, Wisconsin on June 18, 2024.

This warrant authorizes the forensic examination of the **Devices** for the purpose of identifying the electronically stored information described in Attachment B.

1

**ATTACHMENT B**

**Property to Be Seized**

1.      All records on the Devices described in Attachment A that relate to violations of

21 U.S.C. § 841(a)(1), and 18 U.S.C. §§ 924(c) and 922(g), and involve Zadok Z. Pulliam and

other known and unidentified subjects, since **January 1, 2024:**

     a.   preparatory steps taken in furtherance of these crimes;

     b.   all voicemail and call records;

     c.   all text messages and call history

     d.   any audio, video, and/or photograph(s) files on the phone of criminal activity
        or of evidentiary value;

     e.   lists of customers and related identifying information;

     f.   types, amounts, and prices of drugs trafficked as well as dates, places, and
        amounts of specific transactions;

     g.   Types, quantities, and prices of firearms possessed;

     h.   any information related to co-conspirators and sources of drugs and firearms
        (including names, addresses, phone numbers, or any other identifying
        information);

     i.   photographs and/or video depicting possession of drugs, firearms, assets, or
        other activities related to drug trafficking or money laundering;

     j.   any evidence related to either the ownership, purchase, possession, or
        distribution of drugs and/or firearms;

     k.   records of Internet activity, including browser history, search terms that the
        user entered into any Internet search engine, and records of user-typed web
        addresses; and

     l.   all data, communications, information, and records, in whatever form, that
        have any tendency to establish the actual or intended physical location of its
        user, or that of any of their associates involved in criminal activity, as well as
        the physical location of the **Devices**.

1

2.     Evidence of user attribution showing who used or owned the **Devices** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history; and

3.     Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

      a.     records of Internet Protocol addresses used; and

      b.     records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the HIDTA/DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2